```
9
EDMUND GEE, State Bar No. 178627
Assistant United States Trustee
JASON BLUMBERG, State Bar No. 330150
Trial Attorney
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
501 "I" Street, Suite 7-500
Sacramento, CA 95814
Telephone: (916) 930-2100
Facsimile: (916) 930-2099
Email: jason.blumberg@usdoj.gov

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17
```

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 24-21326-C-11 |
| | DC No.: FWP-2 |
| THE ROMAN CATHOLIC BISHOP OF SACRAMENTO, | Date: April 4, 2024<br>Time: 10:00 a.m.<br>Dept.: C<br>Courtroom: 35 |
| Debtor. | |

**OBJECTION AND RESERVATION OF RIGHTS OF THE UNITED STATES TRUSTEE TO DEBTOR'S CASH MANAGEMENT MOTION**

Tracy Hope Davis, United States Trustee for Region 17 (the "**UST**"), hereby files this objection and reservation of rights to the *Debtor in Possession's Emergency Motion for Interim and Final Orders (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts and Related Investment Accounts; (2) Authorizing Maintenance of Existing Business Forms, (3) Excusing Compliance with Section 345(b); (4) Authorizing Continued Use of Current Investment Policy; and (5) Scheduling a Final Hearing* (ECF No. 8) (the "**Motion**"). In support of her Objection, the UST respectfully represents as follows:

# I.     INTRODUCTION

1. The Debtor has 42 bank and investment accounts with approximately $76 million. Because the Debtor has not met its burden of demonstrating cause to waive the collateralization requirements of 11 U.S.C. § 345(b), the Motion should be denied. If the Court is inclined to grant the Motion on an interim basis, the UST requests that the Interim Order include the terms set forth in Paragraph 25 of this Objection.

# II.     STATEMENT OF FACTS

**A.**     **General Case Background**

2. On April 1, 2024, the Debtor commenced the above-captioned case under Chapter 11 of the Bankruptcy Code. See ECF No. 1. The Debtor is currently a debtor in possession under Sections 1107 and 1108 of the Bankruptcy Code.

3. The Debtor has not yet filed the required Schedules and Statements, including Schedule A/B, Schedule D, Schedule E/F, and the Statement of Financial Affairs. See ECF No. 3.

4. The UST is soliciting creditors to form an official committee of unsecured creditors.

5. The initial debtor interview and the meeting of creditors under 11 U.S.C. § 341 will be held on May 8, 2024 and May 13, 2024, respectively.

6. According to the first day declaration of Thomas McNamara (ECF No. 6) (the "**First Day Declaration**"), the Debtor was incorporated as a California corporation sole in 1897. The geographical territory under the jurisdiction of the Debtor "includes 102 parishes, 36 missions, three Newman Catholic Centers, 36 Catholic parish schools and five Catholic high

schools. The total population of this area is more than 3.6 million people, and the total Catholic population is more than 1 million people." See First Day Declaration, at ¶¶ 5, 9.

7. In 2011, all but one of the existing parishes were separately incorporated under California law. Each "parish holds the beneficiary interest in the real property on which its respective parish and school is located. The [Debtor] remains the record title holder, subject to the terms of the irrevocable trust." See First Day Declaration, at ¶ 10.

8. According to the First Day Declaration, "[a]s part of the window created by AB 218 … approximately 260 individuals filed civil actions in which the [Debtor] is named as a defendant." See First Day Declaration, at ¶ 57.

**B.    The Cash Management Motion**

9. As part of the Motion, the Debtor seeks authorization to (i) continue to use its existing cash management system, (ii) continue to use its pre-petition accounts and business forms, (iii) continue its investment policies without posting bonds pursuant to 11 U.S.C. § 345(b), and (iv) continue using its pre-funded credit cards. See Motion, at ¶ 4.

10. As set forth in the Motion, the Debtor maintains 42 bank and investment accounts. Specifically, the Debtor holds:

    a. thirteen (13) bank accounts at Bank of America with a combined balance of approximately $5.5 million. One Bank of America account (#8082) is an imprest account with a balance of $187,315 (the "**Imprest Account**").

    b. three (3) bank accounts at Chase Bank with a combined balance of approximately $36,000.

    c. one (1) bank account at U.S. Bank with a balance of $58,123.

    d. one (1) investment account at U.S. Bank with a balance of $328,935.

    e. one (1) bank account at Notre Dame Credit Union with a balance of $1,033,461. The Debtor intends to close this account.

    f.    one (1) certificate deposit at River City Bank with a balance of $271,232.

    g.    one (1) investment account at Charles Schwab with a balance of $1,349. The Debtor intends to close this account.

    h.    seven (7) investment accounts at Merrill Lynch with a combined balance of approximately $50.5 million. The investments held in these accounts are "United States Treasury Bills and United States Treasury Notes."

    i.    fourteen (14) investment accounts at Christian Brothers Investment Services, Inc. ("**CBIS**") with a combined balance of approximately $18.9 million. The investments held in these accounts are "various fixed income and equities mutual funds."

*See* Motion, at ¶¶ 11-12, 18-19; Declaration of Thomas McNamara, at ¶ 22.

    11.    Bank of America, JP Morgan Chase Bank, U.S. Bank, and River City Bank are authorized depositories in the Eastern District of California. See https://www.justice.gov/ust/ust-regions-r17/file/authorized_depository_eca.pdf/dl.

    12.    Notre Dame Credit Union, Charles Schwab, Merrill Lynch, and CBIS are not authorized depositories in the Eastern District of California. See https://www.justice.gov/ust/ust-regions-r17/file/authorized_depository_eca.pdf/dl.

    13.    As set forth in the Motion, the Debtor "will make efforts to convert its Bank Accounts, with the exception of the BofA Workman's Comp Claims Account (#8082) (which is held and managed by a third party), to Debtor in Possession accounts as soon as reasonably practicable." See Motion, at ¶ 12.

    14.    The Debtor requests authority to maintain its Merrill Lynch, CBIS and River City CD accounts "without the need to comply strictly with Bankruptcy Code Section 345." See Motion, at ¶ 4e. The Debtor also requests authority to leave its U.S. Bank investment account "as is under the circumstances." Id., at ¶ 21.

### III. OBJECTION

**A.      Bankruptcy Code Section 345**

15.     Bankruptcy Code Section 345(b) protects creditors against the loss of estate funds deposited or invested by debtors.  See In re Columbia Gas Systems Inc., 33 F.3d 294, 301 (3d Cir. 1994) ("Ensuring the safety of the bankruptcy funds has been the foremost goal."); In re CWNevada LLC, 602 B.R. 717, 744 (Bankr. D. Nev. 2019) ("[t]hose requirements are designed to ensure the safety of the funds held by a trustee or debtor in possession as a fiduciary of a bankruptcy estate").

16.     Specifically, Section 345(b) provides that money of the estate shall be insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States.  Money of the estate may also be deposited in an entity that has posted a bond in favor of the United States or has deposited securities with the Federal Reserve Bank.

17.     A court may waive the requirements of Section 345 upon a showing of "cause."  See 11 U.S.C. § 345(b).  Thus, the Court may modify the requirements of Section 345(b) for "'just cause' where strict compliance might 'work to needlessly handcuff larger, more sophisticated debtors.'"  See In re Ditech Holding Corp., 605 B.R. 10, 22 (Bankr. S.D.N.Y. 2019) (emphasis added).

18.     To ensure compliance with Section 345(b), the UST has implemented guidelines for debtors in possession regarding bank accounts (the "**UST Guidelines**").  Among other things, the UST Guidelines require debtors in possession to close their pre-petition bank accounts and provide proof of the establishment of debtor in possession account(s) at an authorized depositary.  See United States Trustee Chapter 11 Operating and Reporting

Guidelines for Debtors in Possession (Region 17), at § 3, available at

https://www.justice.gov/ust-regions-r17/region-17-general-information#ch11.[1]

19. Authorized depositories have agreed to maintain collateral, unless an order of the bankruptcy court provides otherwise, in an amount of no less than 115 percent of the aggregate bankruptcy funds on deposit in each bankruptcy estate that exceeds the FDIC insurance limit. See United States Trustee Program Policy and Practices Manual, Volume 7, "Banking and Bonding," (the "**UST Manual**"), §§ 7-1.1 and 7-1.2.1, at pp. 1-2, available at https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual. Authorized depositories have also agreed to make periodic reports so that the UST can monitor compliance. See UST Manual, § 7-1.3.2, at p. 5.

**B.     The Debtor Has Not Demonstrated Cause for a Waiver of Section 345(b).**

20. As noted above, a Court may waive the requirements of Section 345(b) for "cause." In determining whether cause exists under 11 U.S.C. § 345(b), courts have examined the totality of the circumstances. See In re Serv. Merch. Co., Inc., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999); In re Ditech Holding Corp., 605 B.R. at 17. As part of this analysis, courts have considered the following factors:

  1. The sophistication of the debtor's business;

  2. The size of the debtor's business operations;

  3. The amount of investments involved;

---

[1] The UST is mindful that some courts have concluded that guidelines established by the UST do not have the force and effect of law. See, e.g., In re Young, 205 B.R. 894, 897 (Bankr. W.D. Tenn. 1997); In re Lani Bird, Inc., 113 B.R. 672, 673 (Bankr. D. Hawaii 1990); In re Gold Standard Baking, Inc., 179 B.R. 98, 105-06 (Bankr. N.D. Ill. 1995); In re Johnson, 106 B.R. 623, 624-25 (Bankr. D. Neb. 1989). As a result, "if the court is to require debtors to comply with particular provisions of the U.S.T.'s Guidelines, it must be for a reason independent of the Guidelines themselves." Johnson, 106 B.R. at 624.

   4. The bank ratings (Moody's and Standard and Poor) of the financial institutions where debtor-in-possession funds are held;

   5. The complexity of the case;

   6. The safeguards in place within the debtor's own business of insuring the safety of the funds;

   7. The debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

   8. The benefit to the debtor;

   9. The harm, if any, to the estate; and

   10. The reasonableness of the debtor's request for relief from § 345(b) requirements in light of the overall circumstances of the case.

See In re Serv. Merch. Co., Inc., 240 B.R. at 896.

  21. The Debtor has not addressed some of the factors identified by the Serv. Merch. court, including most importantly, the Debtor's ability to reorganize if a financial institution holding the Debtor's funds fails. Given the size of the investments at Merrill Lynch and CBIS, which total approximately $69 million or approximately 90 percent of the Debtor's funds, there appears to be a risk to the estate.

  22. Although "United States Treasury Bills and United States Treasury Notes are backed by the full faith and credit of the United States government" (Motion, at ¶ 18), it is unclear whether the bills and notes are held in the Debtor's name or in the name of a financial intermediary. It is similarly unclear whether the intermediary's failure would impact the Debtor's ability to collect on the bills and notes.

  23. Accordingly, the UST objects to the Motion and the entry of an Order waiving the requirements of Section 345 because the Debtor has failed to provide sufficient evidence that supports a finding that cause exists for this waiver.

24. While the Debtor suggests that funds in one or more of the accounts may or may not be property of the estate, the overriding concern of the UST is that, should a failure contemplated by Section 345 occur resulting in the loss of funds in the accounts, the Debtor would remain liable. In contrast, by virtue of the collateralization and reporting requirements imposed on authorized depositories, compliance with the UST Guidelines will ensure compliance with the requirements of 11 U.S.C. § 345(b). These requirements would not "needlessly handcuff" the Debtor, but rather protect estate funds as Congress envisioned. Cf. In re Ditech Holding Corp., 605 B.R. at 22 (requiring debtors to bring accounts into compliance with Section 345(b)).

25. To the extent the Court is inclined to approve the Motion, such approval should be on an interim basis only and such relief should be limited to the accounts specifically identified in Paragraph 11 of the Motion.[2] Moreover, the Interim Order should:

    a. require the Debtor to close its accounts at Notre Dame Credit Union and Charles Schwab within 15 days of entry of the Interim Order and provide proof of same to the UST no later than the final hearing on the Motion;

    b. require the Debtor to have its bank accounts at Bank of America (other than the Imprest Account), Chase Bank and U.S. Bank designated as "Debtor in Possession" accounts by the institutions within 15 days of entry of the Interim Order and provide proof of same to the UST no later than the final hearing on the Motion;

    c. require the Debtor to institute a system to "sweep" any funds in excess of $250,000 from the Imprest Account on a daily basis into a debtor in possession account at an authorized depository in the Eastern District of California;

---

[2] Paragraph 2 of the proposed Interim Order indicates that the requested relief is not limited to the accounts specifically identified in the Motion. See ECF No. 10, at p. 5 of 11 ("The Debtor … is authorized to … maintain … any and all existing Bank Accounts … including, without limitation, those accounts identified in the Motion ….").

      d. require the Debtor to move the funds in the River City Bank certificate of deposit into a debtor in possession account at an authorized depository in the Eastern District of California upon the certificate's maturity;

      e. attach account statements for the Debtor's credit cards to its monthly operating reports; and

      f. prohibit the Debtor from opening new accounts unless such accounts are debtor in possession accounts at authorized depositories in the Eastern District of California.

26.    With respect to the six (6) "Additional Bank Accounts" identified in the Points and Authorities, the Debtor has represented that such accounts "do not contain funds of the [Debtor], and the [Debtor] does not use or control the operation of the Additional Bank Accounts." See Points and Authorities (ECF No. 9), at ¶ 42; Declaration of Thomas McNamara (ECF No. 11), at ¶ 42.

27.    Based on this representation, the UST does not oppose the Debtor's request for continued use of the Additional Bank Accounts "without the need to designate such accounts as debtor in possession accounts or otherwise complying with the requirements of Bankruptcy Code section 345(b)." See Points and Authorities (ECF No. 9), at ¶ 42.

### IV.   CONCLUSION

28.    Based on the foregoing, the UST respectfully requests that the Court (i) sustain the Objection, and (ii) deny the Motion. The UST reserves all her rights, including to object to final approval of the Motion.

Dated: April 3, 2024                  TRACY HOPE DAVIS
                                       UNITED STATES TRUSTEE

                                       By:/s/ Jason Blumberg
                                       Jason Blumberg
                                       Trial Attorney for the United States Trustee