**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

```
In re:                          ) Case No. 24-21326-C-11
                                )
THE ROMAN CATHOLIC BISHOP OF    )
SACRAMENTO,                     )
                                )
        Debtor in Possession.   )
_____ )
```

**MEMORANDUM REGARDING STIPULATED PROTECTIVE ORDER**

**DATED JUNE 11, 2024**

The Debtor and Official Committee of Unsecured Creditors ask this Court to approve and enter as its own a "Stipulated Protective Order Dated June 11, 2024."

It is a bilateral agreement between the principal parties – Diocese and Victims – creating a protective regime enabling sharing of sensitive, confidential, and privileged information within a closed loop. The agreement, at paragraph 16(a)(8) provides that Insurers may join the protective regime by agreeing to be bound under the specified terms of the agreement.

Notice to interested parties drew Insurer opposition to the agreement's terms for joining the protective regime as being too strict. At a hearing on June 26, 2024, a further hearing was set for July 9, 2024, in view of a suggestion that it might be possible to accommodate some of the Insurer objections.

The Debtor and the Committee, however, urged that the existing Stipulated Protective Order should be entered forthwith. The Debtor expressed concern about becoming enmired in long-term wrangling over confidentiality issues in other diocese cases. The

1

Committee pointed to notorious breaches of confidentiality that have occurred in other diocese cases that it laid at the feet of Insurers and their friends and relations, noting the obvious additional actual harm that may be visited on victims as a result of disclosures about them.

Despite the announced initial preference to await potential revisions at the July 9 hearing, mature reflection after review of the oppositions and the arguments persuade this Court that it should enter the Stipulated Protective Order without further ado so that the Debtor and the Committee can proceed promptly to begin addressing the vital process of assessing the allegations of the victims.

To the extent that accommodations are subsequently agreed upon, the Stipulated Protective Order provides at paragraph 34 that it may be amended by written agreement of the parties and further order of the court. Thus, any revisions agreed upon with Insurers before or at the July 9 hearing can become effective by way of a revised order in accordance with paragraph 34.

The reality of this chapter 11 case is that it about far more important values than the interests of the Insurers. The principal parties are the victims and the Church. It is about redressing long-term psychological harms on account of physical and mental betrayal of trust by spiritual advisors and functionaries of the Church. It is about closure. It is about redemption. It is about reconciliation. It is about reform. It is about forgiveness.

Avoiding delay is particularly important in view of the age of many of the victims, who might not live to see the result. That is yet another reason to jump-start the process by approving the Stipulated Protective Order.

In the context of this case and the multiple categories of issues and players, the Insurers' position regarding the Stipulated Protective order is akin to a tail wagging a dog.

Under any view, the sort of monetary relief Insurers might ultimately agree to fund will be a poor substitute for redress. Nor have the Insurers even conceded liability and agreed to pay; rather, their position taken during the hearing presages a full-blown litigation mentality.

To be sure, this Court is mindful that Insurers have a large role to play in diocese abuse cases and have significant rights. If the Debtor and the Committee expect to confirm a plan that distributes more than the available assets of the Diocese, they ultimately will have to come to terms with the Insurers and not give them cause to deny coverage. Eventually, Insurer rights to information may warrant a more refined protective order.

As this Court explained during the hearing, it views the ability to preserve confidentiality as inversely related to the number of persons who have access. Hence, this Court will be skeptical of proposals to include all the Insurer friends and relations that have heretofore been proposed without an appropriate policing mechanism. The greater the access, the less likely confidentiality will be preserved.

1      If this Court were to be asked to craft a confidentiality
2  order ex cathedra regarding Insurer friends and relations in the
3  context of this case in which leakage could cause real harm to
4  the victims, it likely would require a cash deposit into the
5  court registry in the nature of liquidated damages insuring
6  against leaks resulting from allowing Insurer friends and
7  relations into the loop. Such a refundable deposit would be large
8  enough (think eight-digit number) to assure that the subject
9  Insurer has a powerful economic incentive to police and to
10 preserve confidentiality so as not to lose its deposit.

11     Fortunately, this Court is confident that the sophisticated
12 counsel in the case will be able to craft their own agreements
13 that satisfy the policing and preservation function.

14     For the reasons described herein, the Stipulated Protective
15 Order Dated June 11, 2024, is being entered today.

Dated: July 01, 2024

_____
United States Bankruptcy Judge

4